# Adams *versus* Carroll & Co.

1. Where no other relation exists between the shareholders of a steamboat than that which arises from the joint ownership, they are not partners, nor is their liability to be measured by the rules of law peculiar to the partnership relation.

2. Where one of the shareholders sells out his interest in a steamboat, and the bill of sale, in accordance with the Acts of Congress, is duly acknowledged and recorded, it is valid notice to all past and subsequent creditors with whom the owners may have contracted.

3. To constitute mutual accounts there must be mutual demands. Each party must have a demand or right of action against the other. The excep-

85    209
195   381
195   382

85          209
21 SC ³ 95

[Adams *v.* Carroll.]

tion in the Statute of Limitations, in favor of mutual accounts, has no application when the demand is altogether on one side, although payments on account have been made.

October 6th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas, No. 2, of *Allegheny county:* Of October and November Term 1877, No. 10.

Assumpsit by Carroll & Co., against J. S. Adams, Adam Jacobs and James Collins, as owners of the steamboat Glasgow, for work done and material furnished to the boat. The action was brought in December 1873, and Adams alone defended, pleading non-assumpsit, payment with leave, &c., and the Statute of Limitations.

At the trial the plaintiffs produced an account against the steamboat, which commenced to run on the 27th of March 1867, the charge for that date being $470.98, another on March 30th 1867, of $60, and another on March 31st 1868, of $4.44, making at the latter date an aggregate of $535.42. Several other charges follow, commencing again on June 3d 1868, and closing January 12th 1870, the whole account, exclusive of interest, amounting to $1401.94. In this account five credits of $200 each were given, the first on July 26th 1867, and the other four from and after June 6th 1868. A certified copy of the enrolment of the statute in the office of the collector of customs was then offered in evidence and the plaintiffs closed.

The defendant then put in evidence a certified copy of a bill of sale, which was duly acknowledged and recorded in pursuance of the provisions of the Acts of Congress of July 29th 1850, and March 3d 1865, Revised Statutes of the United States, page 813, as follows:

Sect. 4192. No bill of sale, mortgage, hypothecation, or conveyance of any vessel, or part of any vessel, of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation, or conveyance is recorded in the office of the collector of the customs where such vessel is registered or enrolled. The lien by bottomry on any vessel, created during her voyage, by a loan of money or materials necessary to repair or enable her to prosecute a voyage, shall not, however, lose its priority, or be in any way affected by the provisions of this section.

Sect. 4193. (Act of 3d of March 1865.) The collectors of customs shall record all such bills of sale, mortgages, hypothecations or conveyances  *  *  *  in books to be kept for that purpose, in the order of their reception; noting in such books, and also on the bill of sale, mortgage, hypothecation or conveyance, the time when the same was received  *  *  *  but no bill of sale,

mortgage, hypothecation or conveyance of any vessel shall be recorded, unless the same is duly acknowledged before a notary public or other officer authorized to take acknowledgments of deeds.

Sect. 4194. (Act of July 29th 1850, s. 3.) The collectors of the customs shall keep an index of such records, inserting alphabetically the names of the vendor or mortgagor, and of the purchaser or mortgagee, and shall permit such index and books of records to be inspected during office hours, under such reasonable regulations as they may establish, and shall, when required, furnish to any person a certificate, setting forth the names of the owners of any vessel registered and enrolled, the parts or proportions owned by each.　　*　　*　　*

This bill of sale showed that on the 21st of March 1868, the interest of Adams in the steamboat, which was one-third thereof, was sold to Collins.

In rebuttal, the plaintiffs testified that they knew nothing of this sale of Adams's interest until after suit brought. They also testified, which Adams denied, that the latter had given orders for repairs after April 8th 1868.

The defendant's first point and the answer of the court thereto are herewith appended.

1. That the bill of sale by Adams of his interest in the steamboat Glasgow, dated the 21st day of March 1868, and acknowledged and recorded on the 8th day of April 1868, was full and sufficient notice to the said plaintiffs, from and after the date of recording; that said Adams had disposed of all his interest in said steamboat to James Collins, the vendee, and that he, Adams, had ceased to be a part owner of said boat.

Ans. " This point, as presented is refused. Such an enrolment, such a sale, such a record, would be notice to all the world, except parties who had been trading with and keeping an account at home with this boat. In that respect they do not differ from an ordinary partnership, and the rule in that case is very clear. If A., B. & C., forming a firm, dissolve, and publish the dissolution in all the papers, or two or three of the papers of the city of Pittsburgh, it is notice to all the world except those with whom they have been actually trading; but those with whom they have been in the habit of having running accounts and trading back and forward, are entitled to special notice of the dissolution, or proof that this notice has been brought under their observation or consideration. Therefore the point is refused as presented, but it is affirmed except as to parties having a continuous and running account with the said boat."

His second point, which was as follows, was refused : That the credits for moneys paid in plaintiffs' account show that all the indebtedness of said steamboat, or the owners thereof, on account

[Adams *v.* Carroll.]

of said steamboat, existing at the time of the execution of said
bill of sale and record thereof, has been fully paid.

And the court, in their general charge to the jury, said, "If
you should find that this claim now sued upon is so barred by the
statute—in other words, that the last item of it (it being a running
account) was not charged six years prior to the bringing of the
suit—there can be no recovery; but it being a running account
and credits given from time to time, the statute will only commence
to run at the expiration of the time from the last item. If, there-
fore, you find on an examination of the account that the debt was
incurred six years before the last item sued for, then there ought
to be no recovery, and your verdict should be for the defendant."

The verdict was for plaintiffs, and Adams took this writ, assign-
ing for error the foregoing answers of the court to his points and
the portion of the general charge noted.

*John J. Mitchel,* for plaintiff in error.—The bill of sale was in
accordance with the Acts of Congress, and was full notice to all
the world: Parsons's Laws of Business 315.

Granting, as assumed, that this was a running account, the lia-
bilities prior to April 8th 1868, were the earliest liabilities in the ac-
count. The credits are given generally. We therefore contend that
all the liabilities to the plaintiffs, existing at the date of record of
bill of sale, were fully discharged, and that J. S. Adams was
relieved from any further responsibility in regard to them. No
appropriation seems to have been made by the parties. Where a
general payment is made in the absence of any appropriation by
the parties, the law will apply it to the earliest liabilities of a running
account: Pierce *et al. v.* Sweet, 9 Casey 151.

*John Barton,* for defendants in error.—The ruling of the court,
that this was a running account, is sustained by Chambers *v.*
Marks, 1 Casey 296.

In his second point the defendant asked the court to say, as
matter of fact, that all the indebtedness, when he sold, had been
paid. The money was paid out of the ship's earnings—$200 before
Adams sold out, and $800 afterwards. If the account is to be
separated the latter sum paid by the new owners would first go to
the extinguishment of the part of the bill furnished after they
became owners.

The Act of Congress was intended to apply solely to the title of
the vessel and the mode of transferring the same. It was devised
as a part of the system to regulate the navigation of steam-
boats, and should not be construed to create a new rule of evidence
for the government of merchants and manufacturers who deliver
stores or make repairs to a vessel. In Lincoln *v.* Wright, 11
Harris 76, it was ruled that the certificate of the register of a

[Adams *v.* Carroll.]

vessel is not evidence of ownership in favor of the person therein named or between other parties.

Mr. Justice STERRETT delivered the opinion of the court, October 15th 1877.

Suit was brought against the plaintiff in error and others, as owners of the steamboat Glasgow, for work and materials furnished to the boat. The debit side of the account is composed of several items, commencing March 27th 1867, and ending January 12th 1870; and credit is given for five payments of $200 each on account.

It was shown by the bill of sale, acknowledged and recorded as required by the Act of Congress, that on the 21st of March 1868, Adams, the plaintiff in error, sold his interest in the boat to Collins; and it was contended that he was not liable for any of the articles subsequently furnished. In refusing to affirm defendant's first point, the court instructed the jury that the sale was "notice to all the world except parties who had been trading with and keeping an account at home with the boat," and said, in substance, that, in regard to the necessity of giving notice to those with whom they have had previous dealings, the joint owners of a steamboat, "do not differ from an ordinary partnership." In this we think there was error.

When no other relation exists between the shareholders of a steamboat than that which arises from the joint ownership, they are not partners, nor is their liability measured by the rules of law which are peculiar to the partnership relation: Hopkins *v.* Forsyth, 2 Harris 34. It is true they may become partners in a trade or business in which the boat is employed; but, when it is claimed that such relation exists, it must be averred and proved by competent testimony. It cannot be inferred from the joint ownership alone. In this case it does not appear that the interests of the owners were connected with any thing else than the boat itself. They were sued as joint owners and not as partners. The rule requiring notice of dissolution to be given to those with whom the copartnership has had dealings, has never been extended to a change in the ownership of a steamboat or other chattel. It was not incumbent, therefore, on Adams to notify the plaintiffs that he had disposed of his interest in the boat. The transfer was made in the manner prescribed by the Act of Congress, and nothing more was necessary to relieve him from liability for goods subsequently furnished to the boat.

The defendant's second point was properly refused. There appears to be but one credit prior to the change of ownership. The other payments were dated afterwards, and, if they were not made by the defendant or on his account, he has no right to have them applied to that portion of the debt which was contracted while he was a joint owner of the boat.

[Adams *v.* Carroll.]

As to all the items of plaintiffs' claim prior to the sale, the Statute of Limitations was interposed; and the charge of the court on this subject is assigned for error. The jury were instructed, *inter alia*, that it being "a running account and credits given from time to time, the statute will only commence to run from the last item," and, if the debt was incurred six years before the last item sued for, there ought to be no recovery.

To constitute mutual accounts there must be mutual demands. Each party must have a demand or right of action against the other. The exception in the statute has no application when the demand, as in the present case, is altogether on one side, although payments on account have been made : Ingram *v.* Sherard, 17 S. & R. 347 ; Lowber *v.* Smith, 7 Barr 381. For aught that appears in this case the statute commenced to run from the date of the last item in the account prior to the sale of defendant's interest in the boat, and the jury should have been so instructed.

Judgment reversed, and *venire facias de novo* awarded.